UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

SEAN KRIS PERKINS,

     Plaintiff,

v.                                Case No. 3:20cv6012-MCR-HTC

STATE OF FLORIDA, et al.,

     Defendants.

_____/

## REPORT AND RECOMMENDATION

Plaintiff, Sean Perkins, proceeding *pro se*, initiated this action by filing a civil rights complaint pursuant to 42 U.S.C. § 1983 against twelve (12) defendants arising out of an alleged "false" 911 call made by a librarian. ECF Doc. 1. Upon screening the complaint, the undersigned determined it was not sufficient to be served and provided Plaintiff an opportunity to amend the pleading. ECF Doc. 5. On March 15, 2021, Plaintiff filed an amended complaint, which is now before the Court. The amended complaint was referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636 and N.D. Fla. Loc. R. 72.2(E).

Upon review, the undersigned recommends the amended complaint be DISMISSED. Notably, Plaintiff's claims, which include claims against a librarian, judge, prosecutor, competency doctor, and public defender, and arise out of judgments of conviction in two unrelated state criminal actions, are barred by

*Rooker-Feldman*.   Also, given the incurable deficiencies discussed herein, the undersigned finds an additional amendment to be futile.

## I.    BACKGROUND

On December 12, 2020, Plaintiff, a former inmate of the Florida Department of Corrections, commenced this action by filing a civil rights complaint under 42 U.S.C. § 1983 against the following defendants:   (1) the State of Florida, (2) Governor DeSantis, (3) Mayor Rynearson, (4) Judge Stone, (5) attorney Dearing, (6) attorney Izzo, (7) probation officer Shelton, (8) police officer Mauro, (9) correctional officer Merrit, (10) correctional officer Filipi, (11) librarian Link, and (12) Dr. Zieman.   The allegations in the complaint appeared to be based on a 2017 9-1-1 phone call made by librarian Link, which resulted in criminal proceedings being brought against Plaintiff.   However, as discussed in more detail below, it appears from Plaintiff's amended complaint that he actually takes issue with two different state criminal proceedings, one involving Link and one involving the other Defendants.

Upon screening Plaintiff's complaint, the undersigned found the complaint insufficient to be served on several grounds, including improper joinder and the inclusion of defendants who are not state actors under section 1983 or who are

immune from liability.[1]  ECF Doc. 5.  Thus, the undersigned instructed Plaintiff to cure these deficiencies in an amended complaint or file a notice of voluntary dismissal.

On March 15, 2021, Plaintiff filed an amended complaint that contains less facts and is less coherent than his initial complaint.  Although Plaintiff omits several defendants from the amended complaint, the allegations in the amended complaint against the remaining defendants fare no better.[2]  Moreover, the amended complaint appears to consist of two separate and unrelated complaints.  ECF Doc. 7.  Thus, as an initial matter, the undersigned will construe the document titled "Amended Complaint," ECF Doc. 7 at 1-7, as the amended complaint for this case.  The undersigned will also consider pages 7, 8, and 9 of Exhibit 7-1, and page 2 of Exhibit 7-3, which are affidavits, as being part of, or supporting, the amended complaint.

The undersigned, however, will disregard the other document titled, "Complaint for Violation of Civil Rights Complaint," ECF Doc. 7-1 at 1-9, because

---

[1] In Plaintiff's complaint and amended complaint, Plaintiff states he has a pending state action, 2020 CA 190F, based on the same facts as alleged herein.  The Court, however, could not view a copy of the complaint in that action.  Nonetheless, as the Court stated in its prior deficiency order, if Plaintiff has a parallel state action, Plaintiff's claims here are also subject to dismissal under the *Colorado River* abstention doctrine.  *See Moorer v. Demopolis Waterworks & Sewer Bd.*, 374 F.3d 994, 997 (11th Cir. 2004) (quoting *LaDuke v. Burlington Northern Railroad Co.*, 879 F.2d 1556, 1558 (7th Cir. 1989)) ("The *Colorado River* doctrine . . . authorizes a federal 'district court to dismiss or stay an action when there is an ongoing parallel action in state court.'").

[2] The following defendants have been omitted and, thus, the clerk will be directed to terminate them:  Officer Mauro, Officer Merrit, Officer Filipi, Governor DeSantis, Mayor Rynearson and the State of Florida.

it is a separate and wholly unrelated lawsuit.  Indeed, it appears Plaintiff filed both complaints in one action to avoid paying a second filing fee.  Specifically, on a page attached to the "Complaint for Violations of Civil Rights" form, Plaintiff states "Single complaints at ≠$400.00 filing fee . . . that would be absurd!"  ECF Doc. 7-2.  As the undersigned previously advised Plaintiff, "[f]acts not related to this same incident or issue <u>must</u> be addressed in a separate civil rights complaint."  ECF Doc. 5 at 7.

Additionally, although an amended complaint is generally the operative pleading, the undersigned will consider the allegations in both the original and amended complaint together in determining whether Plaintiff has stated a claim against any of the named Defendants.  The undersigned finds that reading both complaints together is necessary to understand Plaintiff's allegations.  *See Little v. City of New York*, 2014 WL 4783006, at *1 (S.D.N.Y. Sept. 25, 2014) ("Because the plaintiff is proceeding *pro se*, the Court will consider the Original Complaint and the Amended Complaint together as the operative pleading.").

## II.    PLAINTIFF'S ALLEGATIONS

On August 26, 2017, at approximately 10:00 a.m., Defendant Link, a Fort Walton Beach public librarian, "phoned in a false 9/11 call" because she believed Plaintiff was being "loud[] an[d] aggressive."  ECF Doc. 1 at 10.  In an attempt to dispute Defendant Link's "false report," Plaintiff asked if he could speak with

dispatch. *Id.* When Defendant Link denied Plaintiff's request, Plaintiff "hi[t] the hang up dial," ending the call. *Id.* Defendant Link proceeded to make another 911 call, which resulted in Plaintiff being arrested, charged with a felony offense, and banned from the library. *Id.*; *see also State of Florida v. Sean Perkins*, 2017-CF-2374F. Plaintiff says no more about Link, and it is unclear what relief he seeks with regards to Link.[3] Instead, Plaintiff jumps forward almost three years to complain about a second criminal action filed against him.[4]

On January 28, 2020, Defendant Shelton "falsely arrested [Plaintiff]" behind Destiny church "without substantial evidence of a violation of probation." ECF Doc. 7 at 5. The arrest arose from a phone call Plaintiff had with Defendant Shelton. *Id.* During that call, Defendant Shelton asked Plaintiff whether he had any weapons and Plaintiff responded he had a machete. *Id.* Defendant Shelton advised Plaintiff that he "cannot have a machete" and possession of such "could be a violation of probation." *Id*. While Plaintiff understands "a machete does resemble a weapon," he told Defendant Shelton a machete "is a tool bought and sold as such," and he "thought of it like a pocket knife." *Id*. Defendant Shelton informed Plaintiff that a

---

[3] Indeed, Plaintiff does not include any factual allegations as to Defendant Link in the body of the amended complaint. Instead, the allegations above are taken from an affidavit submitted with the amended complaint. Nonetheless, the Court will liberally construe Plaintiff's amended complaint as also including Defendant Link.

[4] As Plaintiff was advised in the prior deficiency order, he cannot join unrelated claims in the same action. Thus, as an initial matter, the claims against Link are improperly joined with the claims against the remaining defendants. *See* Fed. R. Civ. P. 20.

machete "[i]n the state of Florida . . . is classified as a weapon because of others misuse of [it as] a tool." *Id.* Plaintiff contends Defendant Shelton never instructed him to "get rid of [or] dispose" of his machete. *Id.*

The arrest resulted in Plaintiff being found to have violated a probation ordered in a 2018 criminal case, case number 2018-CF-1175F.[5] Defendant Judge Stone and Defendants Zieman, Dearing, and Izzo were involved with the 2018 case and subsequent 2020 modification of probation. The remainder of Plaintiff's allegations center around this modification of probation. ECF Doc. 7 at 6. Namely, Plaintiff alleges Defendant Dearing, his court appointed public defender, "was ineffective" and that her advice "to plea insane" "went against sound logic" because "[Plaintiff] is not 'insane'" and has "two competency passes with Florida State Hospital." *Id.*

As to Dr. Zieman, Plaintiff alleges he "disregarded sending a copy of audio recordings" that were taken at the Okaloosa Department of Corrections, and such recordings "would prove [Plaintiff's] competency." ECF Doc. 7-1 at 8-9. Plaintiff further contends that Defendant Izzo, the assistant state attorney who prosecuted Plaintiff's 2018 case and 2020 violation of probation, would call Defendant Zieman to testify about Plaintiff's incompetency over Plaintiff's objection. *Id.*

---

[5] The Court takes judicial notice of the 2017 and 2018 dockets, and the full record of the 2017 and 2018 cases can be accessed at https://clerkapps.okaloosaclerk.com/benchmarkweb2/ CourtCase.aspx/CaseSearch.

Finally, Plaintiff complains about numerous rulings decided by Judge Stone. Specifically, Plaintiff alleges Judge Stone prohibited Plaintiff from reading "a carefully prepared statement which stated a plea of innocence," refused to allow Plaintiff to fire his attorney and represent himself, failed to hear a motion for ineffective assistance of counsel, disregarded Plaintiff's objections, and declined to drop the charges. ECF Doc. 7-1 at 7-8.

As relief, presumably for the "false" report by Link that lead to the 2017 case, and the decisions in the 2018 case, Plaintiff seeks "what the constitution promises." ECF Doc. 7 at 7.

## III.   DISCUSSION

District courts have "'unquestionable' authority to control their own dockets. This authority includes 'broad discretion in deciding how best to manage the cases before them.'" *Smith v. Psychiatric Sols., Inc.*, 750 F.3d 1253, 1262 (11th Cir. 2014) (citations omitted). Thus, a district court may *sua sponte* dismiss a *pro se* litigant's complaint, where the plaintiff cannot cure the defects by amending his complaint, or an amendment would be futile. *See Horn v. Estate of Camacho*, 817 F. App'x 872, 874 (11th Cir. 2020); *Woldeab v. DeKalb Cnty Bd. of Ed.*, 885 F.3d 1289, 1291 (11th Cir. 2018).

As discussed below, the Court finds a *sua sponte* dismissal to be necessary in this case. At the heart of Plaintiff's amended complaint is his frustration with the

outcome of two state court criminal cases. However, a complaint under section 1983 is not a vehicle for an appeal of a state court decision. Claims seeking to undermine a prior state court judgment are barred by the *Rooker-Feldman* doctrine. Additionally, as Plaintiff was previously advised, with the exception of Defendant Shelton, the other Defendants are either immune from liability or are not state actors under section 1983. Plaintiff, however, has not stated a claim for malicious prosecution against Shelton.

### A. Plaintiff's Claims are Barred by *Rooker-Feldman*

Under the *Rooker-Feldman* doctrine,[6] "a United States District Court has no authority to review final judgments of a state court in judicial proceedings." *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462, 482 (1983). In other words, federal courts may not exercise jurisdiction over "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005).

---

[6] The doctrine arises from two cases: *Rooker v Fidelity Trust Co.*, 263 U.S. 413 (1923), in which the United States Supreme Court noted district courts only possess original jurisdiction and, thus, the United States Supreme Court is the only federal court that can hear an appeal of a state court judgment, and *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462 (1983), in which the Supreme Court later re-affirmed its earlier decision.

Case No. 3:20cv6012-MCR-HTC

"The doctrine is a jurisdictional rule that precludes the lower federal courts from reviewing state court judgments." *Alvarez v. Attorney Gen. for Fla.*, 679 F.3d 1257, 1262 (11th Cir. 2012) (citation omitted). The doctrine "operates as a bar to federal court jurisdiction where the issue before the federal court was 'inextricably intertwined' with the state court judgment so that (1) the success of the federal claim would 'effectively nullify' the state court judgment, or that (2) the federal claim would succeed 'only to the extent that the state court wrongly decided the issues.'" *Id.* at 1262–63 (quoting *Casale v. Tillman*, 558 F.3d 1258, 1260 (11th Cir. 2009)).

In determining whether the *Rooker-Feldman* doctrine applies, this Court considers whether: "(1) the party in federal court is the same as the party in the state court; (2) the prior state court ruling was a final or conclusive judgment on the merits; (3) the party seeking relief in federal court had a reasonable opportunity to raise its federal claims in the state court proceeding; and (4) the issue before the federal court was either adjudicated by the state court or was inextricably intertwined with the state court judgments. *Storck v. City of Coral Springs*, 354 F.3d 1307, 1310 n.1 (11th Cir. 2003) (quoting *Amos v. Glynn County Board of Tax Assessors*, 347 F. 3d 1249, 1265 (11th Cir. 2003)). The Eleventh Circuit has further defined the "inextricably intertwined" requirement as the situation when a "federal claim succeeds only to the extent that the state court wrongly decided the issues

before." *Goodman ex rel Goodman v. Sipos*, 259 F.3d at 1332 (quoting *Siegel v LePore*, 234 F.3d 1163, 1172 (11th Cir. 2000) (en banc)).

Each of those elements are met here. In the 2017 case involving Defendant Link, Plaintiff was charged with one count of trespassing—failing to leave the property upon order by the owner and one count of tampering in a misdemeanor proceeding. *See* 2017 CF 2374F. Plaintiff was later sentenced to time served and barred from the library's premises. *Id*. In the 2018 case, Plaintiff was arrested and charged with one count of arson in the first degree and one count of burglary of an unoccupied structure. *See* 2018 CF 1175F. Plaintiff was sentenced to time served and 24 months of probation. *Id*. As stated above, Plaintiff was determined to have violated the probation, and after a hearing, the probation was modified to include as a condition, 11 months and 29 days in Okaloosa County Jail. Thus, elements one and two of *Rooker-Feldman* are met—namely, Plaintiff was a party in the state court lawsuits and both cases resulted in a final judgment on the merits.

Additionally, elements three and four are also met because Plaintiff had a reasonable opportunity to raise the claims he now asserts, and those claims were adjudicated by the state court. First, as to the 2017 lawsuit, Plaintiff claims Defendant Link "phoned in a false 911 call and lied to officers." ECF Doc. 1 at 10. In other words, Plaintiff disputes the charges that were brought against him based on Defendant Link's call. However, during his criminal prosecution, Plaintiff was

appointed a public defender, was allowed to enter a written plea of not guilty, and was able to engage in discovery—all events which sought to undermine the charges against him. Despite his defense, Plaintiff was ultimately sentenced and banned from the Fort Walton Beach public library. The *Rooker-Feldman* doctrine bars Plaintiff from relitigating those issues here.

As to the 2018 case and 2020 violation of probation, Plaintiff claims his public defender, Defendant Dearing, was ineffective, and that Judge Stone "refused to allow him to read a carefully prepared statement," ECF Doc. 7 at 6, "which stated a plea of innocence and a request for charges dropped," ECF Doc. 7-1 at 7. Plaintiff's own allegations, however, clearly indicate he previously litigated these issues during his state proceeding. Indeed, Plaintiff admits Judge Stone had "a motion for ineffective counsel on file," "a request for charges to be dropped on file," and "a letter of intent on file," but Judge Stone "disregarded . . . [his] objection." ECF Doc. 7-1 at 8. Quite simply, Plaintiff filed a motion against Defendant Dearing based on the same allegations here, and Plaintiff objected to Judge Stone's denial on his other motions. Plaintiff, in essence, seeks to have this Court overturn Judge Stone's decisions on his motion for ineffective counsel and the denial of his other motions, which this Court is barred from doing under *Rooker-Feldman*.

**B. Plaintiff Seeks Relief Against Defendants Who are Not "State Actors" Under Section 1983**

Even in the absence of *Rooker-Feldman*, and as Plaintiff was previously instructed, the claims against Defendants Link, Dearing, and Zieman are subject to dismissal because these defendants are not "state actors" under section 1983. "A successful section 1983 action requires that the plaintiff show he was deprived of a federal right by a person acting under color of state law." *Almand v. DeKalb Cnty., Ga.*, 103 F.3d 1510, 1513 (11th Cir.1997). "A person acts under color of state law when he acts with authority possessed by virtue of his employment with the state," *Griffin v. City of Opa–Locka*, 261 F.3d 1295, 1303 (11th Cir.2001), or when "the manner of his conduct . . . makes clear that he was asserting the authority granted him and not acting in the role of a private person." *Williams v. United States*, 341 U.S. 97, 100 (1951). As Plaintiff was previously advised by the Court, Defendants Link, Zieman, and Dearing are not state actors under section 1983.

First, although Defendant Link is a public librarian employed by the city of Fort Walton Beach, Plaintiff's allegations against her are not rooted in any action she took as a city employee. Rather, Plaintiff merely claims Defendant Link "phoned in a false 9/11 call," which resulted in Plaintiff being banned from the premise. However, 911 calls are "functionally equivalent to that of any private citizen calling for police assistance." *Redding v. St. Eward*, 241 F.3d 530, 533 (6th Cir. 2001). In other words, it was Defendant Link's status as a private citizen that

gave her the ability to place the 911 call and not her position as a public librarian or city employee.

Likewise, the simple fact that Defendant Dearing was appointed as Plaintiff's public defender in his state criminal proceedings does not make her a "person" for purposes of section 1983. The only allegations against Defendant Dearing stem from Plaintiff's dissatisfaction with her legal strategies—namely, that she was ineffective and gave advice that "went against sound logic." However, the Supreme Court has made it abundantly clear that "a public defender does not act under color of state law when performing a lawyer's traditional functions as counsel to a defendant in a criminal proceeding." *Polk Cty. v. Dodson*, 454 U.S. 312, 325 (1981). This is because a public defender "is not acting on behalf of the State, [s]he is the State's adversary." *Id.* at n.13. While Plaintiff is free to disagree with the advice of his counsel, such disagreement does not provide grounds for a federal action.

Similarly, Plaintiff has proffered no allegations to indicate Dr. Zieman's failure to produce certain "audio recordings" was a result of any state authority. Dr. Zieman is a private psychologist who works in Pensacola, Florida. For a private individual to be held liable under section 1983, the person "must be jointly engaged with state officials in the prohibited conduct to constitute acting under color of state law." *McCrary v. Tobacco-Firm Army*, No. 1:10-CV-00117-MP-AK, 2010 WL

3219315, at *1 (N.D. Fla. Aug. 12, 2010). However, Plaintiff's sparse one sentence allegation against Dr. Zieman simply illustrates he possessed recordings of a meeting he had with Plaintiff. Plaintiff does not allege Dr. Zieman's refusal to supply such recordings was done at the at the direction of, or in conjunction with, any state agency or state official. Indeed, the record is devoid of any facts indicating Dr. Zieman had a relationship with the State of Florida beyond his residency.

### C. Plaintiff Seeks Relief Against Defendants Who are Immune from Liability

Likewise, regardless of *Rooker-Feldman*, Plaintiff's claims against Judge Stone and Prosecutor Izzo should be dismissed because, as the Court previously instructed Plaintiff, these defendants are immune from liability, based on judicial and prosecutorial immunity, respectively.

Judicial immunity applies to all judicial acts. "[W]hether an act by a judge is a 'judicial' one relate[s] to the nature of the act itself, *i.e.*, whether it is a function normally performed by a judge, and to the expectations of the parties, *i.e.*, whether they dealt with the judge in his judicial capacity." *Stump v. Sparkman*, 435 U.S. 349, 362 (1978). "In other words, we look to the particular act's relation to a general function normally performed by a judge[.]" *Mireles v. Waco*, 502 U.S. 9, 13 (1991).

Immunity may be overcome only (1) where the judge has not acted within his judicial capacity, or (2) where the judge's actions, though judicial in nature, are taken in the complete absence of all jurisdiction. *See id.* at 11–12. An act is done in "clear

absence of all jurisdiction," for judicial immunity purposes, if the matter upon which the judge acted is clearly outside the subject-matter jurisdiction of the court over which he presides. *See Dykes v. Hosemann*, 776 F.2d 942, 946–48 (11th Cir. 1985). However, a judge is not deprived of absolute immunity from liability for damages "because the action he took was in error, was done maliciously, or was in excess of his authority[.]" *Stump*, 435 U.S. at 356; *see also Mireles*, 502 U.S. at 11 ("[J]udicial immunity is not overcome by allegations of bad faith or malice.").

There can be no doubt that Plaintiff's allegations against Judge Stone arise from the decisions Judge Stone made in Plaintiff's criminal cases. As stated above, Plaintiff alleges Judge Stone prohibited him from reading "a carefully prepared statement which stated a plea of innocence," refused to allow him to fire his attorney, failed to hear a motion for ineffective assistance of counsel, disregarded Plaintiff's objections, and declined to drop the charges. ECF Doc. 7-1 at 7-8. Because each of these actions were taken in Judge Stone's judicial capacity, Judge Stone is immune from liability.

Defendant Izzo was the prosecutor assigned to Plaintiff's 2018 case. Prosecutors have absolute immunity for all activities that are "intimately associated with the judicial phase of the criminal process." *Imbler v. Pachtman*, 424 U.S. 409, 430 (1976). Prosecutorial immunity also applies to a prosecutor's actions undertaken as an advocate for the State. *Hart v. Hodges*, 587 F.3d 1288, 1295 (11th

Cir. 2009). This function encompasses a wide range of conduct including illegal and unconstitutional conduct, such as "filing an information without investigation, filing charges without jurisdiction, filing a baseless detainer, offering perjured testimony, suppressing exculpatory evidence, refusing to investigate complaints about the prison system, and threatening further criminal prosecutions." *Hart*, 587 F.3d at 1295 (quoting *Henzel v. Gerstein*, 608 F.2d 654, 657 (5th Cir. 1979)). As the Eleventh Circuit stated in *Hart*, when acting as an advocate, "the absolute immunity doctrine has evolved such that even wrongful or malicious acts by prosecutors are allowed to go unredressed." *Hart*, 587 F.3d at 1298.

The only allegation against Defendant Izzo is her statement that "Zieman would stand testimony, before [Plaintiff] objected, as if incompetent." ECF Doc. 7-1 at 9. From what the Court can discern, Plaintiff takes issue with Defendant Izzo's decision to have Dr. Zieman testify regarding his mental competency. However, Defendant Izzo's decision on how to prosecute Plaintiff's criminal action is a matter squarely within her duties as an advocate of the state. Accordingly, Plaintiff's claims against Defendant Izzo cannot proceed and must be dismissed.

### D. Plaintiff Fails to State a Malicious Prosecution Claim Against Defendant Shelton

The only remaining defendant is Defendant Shelton, a Fort Walton Beach probation officer, who Plaintiff claims "falsely arrested [him] without substantial evidence of a violation of probation." ECF Doc. 7 at 5. A liberal reading of

Plaintiff's amended complaint, however, indicates he is actually attempting to assert a claim against Defendant Shelton for malicious prosecution under the Fourth Amendment.

To establish a federal malicious prosecution claim, a "plaintiff must prove a violation of his Fourth Amendment right to be free from unreasonable seizures in addition to the elements of the common law tort of malicious prosecution." *Wood v. Kesler*, 323 F.3d 872, 881 (11th Cir. 2003). This requires a Plaintiff to show "(1) a criminal prosecution instituted or continued by the present defendant; (2) with malice and without probable cause; (3) that terminated in the plaintiff accused's favor; and (4) caused damage to the plaintiff accused." *Id.* at 882. "The failure of a plaintiff to establish any one of these . . . elements is fatal to a claim of malicious prosecution." *Alamo Rent-A-Car, Inc. v. Mancusi*, 632 So. 2d 1352, 1355 (Fla. 1994)

Plaintiff's malicious prosecution claim fails because he cannot show a lack of probable cause or a decision terminated in his favor. As set forth above, Plaintiff admits he was arrested for violating his probation because he was in possession of a machete. Although Plaintiff disagrees that a machete is a "weapon," he does not dispute Defendant Shelton advised him he could "not have a machete" because the State of Florida classifies it as a weapon and possession of such "could be a violation of probation." ECF Doc. 7 at 5. Thus, Plaintiff's own admissions that he had a

machete, knew a machete resembled a weapon, and kept the machete after he knew it was a violation of his probation irrefutably establish that Defendant Shelton had probable cause of Plaintiff's non-compliance with the terms of his probation.

Moreover, in October 2020, Judge Stone reinstated and modified the probation to include 11 months and 29 days in Okaloosa County Jail and then terminated the probation upon Plaintiff's release from the Jail. The violation of probation, thus, did not end in Plaintiff's favor. Therefore, Plaintiff has failed to state a claim for malicious prosecution under the Fourth Amendment and, even in the absence of *Rooker-Feldman*, Plaintiff's claims against Defendant Shelton should be dismissed.

## IV.    CONCLUSION

Generally, "a district court must grant a plaintiff at least one opportunity to amend their claims before dismissing them if it appears a more carefully drafted complaint might state a claim upon which relief can be granted." *Silva v. Bieluch*, 351 F.3d 1045, 1048-49 (11th Cir. 2003). The Court has already done that here. An additional opportunity to amend is not necessary as the defects in the amended complaint are incurable and an amendment would be futile. *Rance v. Winn*, 287 F. App'x 840, 841 (11th Cir. 2008) ("[D]istrict courts need not permit amendment where it would be futile to do so."). This is particularly true where Plaintiff failed to cure the deficiencies previously identified. *See Skillern v. Georgia Dept. of*

*Corrections Com'r*, 379 F. App'x 859, 860 (11th Cir. 2010) (affirming dismissal of *pro se* prisoner complaint for failure to correct Rule 20 deficiencies after being directed to do so by magistrate judge).

Accordingly, it is respectfully RECOMMENDED that:

1.     This action be DISMISSED for failure to state a claim on which relief can be granted.

2.     The clerk be directed to close the file.

Done at Pensacola, Florida, this 22nd day of April, 2021.

*/s/ Hope Thai Cannon*
**HOPE THAI CANNON**
**UNITED STATES MAGISTRATE JUDGE**

<u>NOTICE TO THE PARTIES</u>

Objections to these proposed findings and recommendations must be filed within fourteen (14) days of the date of the Report and Recommendation. <u>Any different deadline that may appear on the electronic docket is for the court's internal use only and does not control.</u> An objecting party must serve a copy of its objections upon all other parties. A party who fails to object to the magistrate judge's findings or recommendations contained in a report and recommendation waives the right to challenge on appeal the district court's order based on the unobjected-to factual and legal conclusions. *See* 11th Cir. Rule 3-1; 28 U.S.C. § 636.